IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JIMMY SHANE CANTRELL
ADC # 98730                                                                              PLAINTIFF

V.                              5:05CV00157 JMM

LARRY NORRIS, Warden, ADC,
RAY HOBBS, Assistant Director, ADC,
LARRY MAY, Assistant Director, ADC,
GRANT HARRIS, Warden, Varner Unit,
TIM MONCRIEF, also known as
T. MONCRIEF                                                                           DEFENDANTS

### ORDER

A bench trial was held before the Court on July 19, 2010. At the conclusion of the trial, the Court took the case under advisement. As requested, the parties have filed post-trial briefs. Plaintiff has alleged that Defendants were deliberately indifferent to his health and safety. Specifically, Defendants Norris, Hobbs, May, and Harris failed to train, supervise, and staff Barrack 19 and Defendant Moncrief failed to properly conduct a shakedown on January 17, 2005 which led to Plaintiff's injury. After review of the entire record, the Court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

1   Plaintiff was transferred into Barrack 19 at the Varner Unit of the ADC on December 21, 2004.

2.  Inmate Michael Collins was already housed in Barrack 19 when Plaintiff transferred in.

3.  Barrack 19 is one of four open barracks in the cell block. Each barrack houses approximately 50 inmates. Barracks 19 and 21 are divided by a glass security booth to observe inmates. Barracks 20 and 22 are similarly divided.

4. On January 17, 2005, Plaintiff was classified as a Class II inmate.

5. On January 17, 2005, inmate Michael Collins was classified as a Class I inmate. Collins had been classified as a Class I inmate since June 12, 2001.

6. Class I is the highest level an inmate can achieve. Class IV is the lowest level. Inmates can increase their class levels by exhibiting good behavior and receiving no disciplinaries.

7. There was no prior history of violence or problems between Plaintiff and Inmate Collins.

8. Sometime during the morning hours of January 17, 2005, a barrack-wide search was conducted in Barrack 19. During the search, security guards searched the barrack for contraband and weapons. Plaintiff did not alert security personnel performing the shakedown as to various locations throughout Barrack 19 in which he knew various objects had been stashed.

9. After the shakedown, Plaintiff sat on his bunk to watch television. Inmate Collins approached Plaintiff and asked him if Plaintiff knew what happened to a ring of his that was missing. Plaintiff told Collins that he did not know what happened to his ring.

10. Shortly thereafter, Plaintiff observed Inmate Collins in the bathroom area in Barrack 19 putting on gloves. Plaintiff thought Collins was getting ready to be in a fight. Plaintiff did not attempt to alert security staff as to his observations of Inmate Collins and the gloves.

11. After Collins put on the gloves, he again approached Plaintiff to inquire as to the location of his ring, or the identity of who may have taken his ring. Again, Plaintiff responded that the did not know. Collins then stabbed Plaintiff one time in the back with a shank while Plaintiff sat on his bunk.

12. Plaintiff did not know Inmate Collins was going to stab him on January 17, 2005.

13. Plaintiff went to the door of Barrack 19. Officer Shawanda Jones, who was supervising Barracks 19 through 22, arranged for the door to be opened and allowed Plaintiff to exit the barrack.

14. Lieutenant Clarence Bass and two other officers came to assist Officer Jones.

15. Plaintiff was promptly provided medical treatment for his injury.

16. After the January 17, 2005 assault, Plaintiff was moved to another barrack.

17. Inmate Collins was issued a Major Disciplinary for his actions against Plaintiff. He was then transferred to the Varner Super Max to be housed.

18. On January 17, 2005, Lieutenant Bass requested Inmate Collins and Plaintiff be placed on each other's Enemy Alert lists. On January 20, 2005, Assistant Warden Tim Moncrief placed Plaintiff and Inmate Collins on each other's Enemy Alert list, thus indicating they were not to be housed in the same barrack again.

19. In order to determine which inmates were going to be housed in a particular area, the ADC used, and still uses, a classification process overseen by a classification committee.

20. The committee looks at factors, such as sentence length, past institutional history, medical classifications, propensity for violence, the disciplinary history of an inmate, gang affiliation, job capabilities and job assignments.

21. Prison officials are more likely to anticipate problems out of inmates who are on lower class-levels than inmates who are higher in class.

22. Barracks 19-22 housed inmates that had higher classification levels, such as vo-tech inmates who are relatively short term inmates, trustees who work outside the perimeter fence, porter, and clerks.

23. There is a need for officers to physically keep a distance between themselves and the inmates, which is for the safety of the officers.

24. The shift lieutenant was the individual responsible for making the daily shift and post assignments of officers throughout the unit. On July 17, 2005, the shift lieutenant was Clarence Bass. Lieutenant Bass is not a defendant in this case.

25. During the 2004 calendar year, there were 65 "assaults" documented through the major disciplinary process at the Varner Unit. Of those 65 assaults, 32 were for verbal threats toward staff, 15 were for fist fights, and only 2 were for using a weapon.

26. A staff analysis can assist correction officials in determining where to assign staff members to work. The staff analysis takes into consideration several things, such as the size of the facility, how many inmates are going to be housed within the unit, the security level of the inmates to be housed there, as well as the physical layout of the unit. The staff analysis also provides the department with the flexibility of shutting down a post if circumstances suggest it. The staffing analysis, coupled with the classification of inmates present in the various parts of the facility, defines where deviations can be made.

27. Financial funding for additional security staff positions has always been requested from the General Assembly.

28. The ADC employs a person full-time to go from one corner of the state to the other, as well as travel out of state, to recruit new employees for the department. It is difficult to recruit employees at the Varner unit because there is not a large surrounding community to draw employees from.

29. Plaintiff was aware that there was a particular area in the back of the barrack where inmates used to hide things, and he made no effort to notify any of the 15-20 officers

present in the barrack during the shakedown as to what knowledge he had.

30. Cantrell made a conscious decision not to notify staff about the initial altercation with Collins, or about the ranting episode, or of Collins putting gloves on which he interpreted to mean that Collins was going to fight someone.

31. Cantrell further acknowledged that, at a minimum, he knew that an officer was posted outside the barrack in the hallway, and that he was free to go to the door and seek assistance if needed.

32. Although he was aware of the grievance process and how to utilize it, Cantrell did not file any grievances to alert prison officials of his concerns about the security in Barrack 19 prior to January 17, 2005.

33. Defendant Hobbs was the deputy director of the Varner Unit in 2005. He was the direct line of communication with the warden and he was responsible for responding to grievance appeals. Defendant Hobbs testified that the staffing in Barrack 19 on January 17, 2005 was appropriate based upon the security level of the barrack. He noted that four officers were assigned to oversee Barracks 19-22 on that date. That responsibility may include being in the hallway, feeding, taking inmates to yard call, or counting.

34. Defendant Harris was the warden of the Varner Unit in January 2005. He was never made aware at any point in 2004 that there was any increase in problems with the inmates in the Barrack 19. Defendant Harris testified that Barracks 19-22 were the "good" barracks where inmates wanted to be housed. Inmates would work to increase their classification level in order to be housed in those barracks. He also testified that there would have been frequent traffic from staff and security outside Barracks 19-22 including a captain, major, and lieutenant making rounds every two hours.

35. Defendant Larry May was the Deputy Director of Operations in Pine Bluff in January 2005. He had no personal awareness that Inmate Collins was going to attack Inmate Cantrell on January 17, 2005. Defendant May had never spoken with Cantrell in person, and prior to his arrival in court, had never met him.

36. Defendant Tim Moncrief was the Assistant Warden of Security at the Varner Unit in January 2005. He was present for the shakedown in Barrack 19 on January 17, 2005. He was unaware of any shank not having been recovered in Barrack 19 as a result of the barrack-wide search. Defendant Moncrief was not made aware of any complaints about the staffing for the Barracks 19-22. He was also not made aware of any increase in violent acts in the Barracks 19 in 2004.

37. As soon as the Varner Unit administration was put on notice about a problem between Cantrell and Collins, they took immediate steps to prevent any further harm.

38. Plaintiff withheld information from the Defendants with regard to Inmate Collins' actions and also withheld information as to where weapons could be housed and stored in Barrack 19. He chose not to provide any of that information which could possibly have prevented the incident.

39. Plaintiff urges the Court to find that the Defendants were deliberately indifferent to his safety by allowing one officer to supervise Barracks 19-22. It is undisputed that Officer Jones was stationed outside the door of Barracks 19 at the time of the incident. There was no evidence presented that additional officers were supervising Barracks 19-22 at the time of the incident. However, two additional officers were immediately available to assist Officer Jones after the incident.


## II. Conclusions of Law

1. The Supreme Court has held that the Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates [and] ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).[1]

2. Prison officials act unreasonably– thereby violating the Eight Amendment– when they are deliberately indifferent to a substantial risk of serious harm. To prove deliberate indifference, an inmate must make a two-part showing: The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind. The deprivation is objectively, sufficiently serious, [under the first requirement when] the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm. An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it. *Nelson v. Shuffman* 603 F.3d 439, 446 (8th Cir. 2010).

3. In order to establish a constitutional violation in this case, Cantrell must show: (1) that his incarceration in Barrack 19 posed a substantial risk of serious harm, and (2) the Defendants actually knew of but disregarded, or were deliberately indifferent to, the

---

[1] Plaintiff makes his claim under the Eighth and the Fourteenth Amendments. Plaintiff is protected under the Eighth Amendment as he is a prisoner, not a detainee. "The distinction is irrelevant because we have previously determined the Fourteenth Amendment provides detainees at least the same level of constitutional protection as the Eighth Amendment does to prisoners." *Nelson v. Shuffman*, 603 F.3d 439 (8th Cir. 2010).

health and safety of Cantrell and all inmates housed in Barrack 19.  *Pagels v. Morrison,* 335 F.3d 736, 740 (8th Cir. 2003); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

4. "Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk."*Jackson*, 140 F.3d at 1152 (quoting *Newman v. Holmes,* 12 F.3d 650 (8th Cir. 1997).

5. A right is recklessly disregarded when a prisoner is exposed to a pervasive risk of harm and prison officials fail to respond reasonably to the risk.  "A 'pervasive risk of harm' requires evidence of frequent violence or sexual assaults which places a prisoner or group of prisoners in reasonable fear for their safety; and prisoners must apprise the prison officials of the existence of the problem and the need for protective measures. In every case, a 'pervasive risk' is something more than a single incident and something less than a riot."  *Falls v. Nesbitt*,  966 F.2d 375, 378 (8th Cir. 1992).

6. The Eighth Circuit Court of Appeals has held in several cases that "qualified immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate."  The fact that the Defendants were unaware of the danger to the Plaintiff from Inmate Collins is relevant to the Defendants' subjective knowledge of the overall risk to Plaintiff.  *See Krein v. Norris,* 309 F.3d 487, 492 (8th Cir. 2002).

7. "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk."  *Hott v. Hennepin County, Minn*., 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted).  The question is whether a prison official has a

"sufficiently culpable state of mind," meaning that he is deliberately indifferent to an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

8. Although there was testimony that ADC requires two security guards to be stationed in Barracks 19-22, the failure of the Defendants to have two guards there at the time of the stabbing incident on January 17, 2005 was not shown to be deliberate. Defendant Grant Harris, who was the warden at the Varner unit at the time, testified that he did not know why two guards were not stationed at Barracks 19-22 at the time of the incident. However, security and staff personnel would have been in the zone.

9. There was, however, considerable testimony and evidence presented that the ADC has had a problem with staffing through no fault of their own. The ADC actively recruits qualified employees and holds job fairs throughout the State. The ADC even provides buses to transport employees who live long distances from the prison.

10. Plaintiff has failed to show that the Defendants' conduct was sufficiently reckless to justify his Eighth Amendment claim. There was no evidence that the Defendants had a sufficiently culpable state of mind as to the safety of Plaintiff or other inmates housed in Barrack 19.

11. The fact that a violation of ADC staffing policy may have occurred on January 17, 2005 does not rise to the level of a constitutional violation alone. *See Tucker v. Evans,* 276 F.3d 999, 1003 (8th Cir. 2002).

12. The evidence established that the Defendants, as well as other ADC officials, took reasonable measures to guarantee Plaintiff's safety.

13. Specifically, the Court finds that Defendant Norris and May had no personal knowledge of, or responsibility for, the staffing at the Varner Unit on January 17, 2005 and are not

liable under a theory of respondeat superior. Therefore, Plaintiff has failed to state a claim against them.

14. Defendants Hobbs, Harris and Moncrief are entitled to qualified immunity. While Plaintiff's right to be free from harm at the hands of other inmates is clearly established, the Defendants did not show a reckless disregard for Plaintiff's rights. The Defendants' failure to require two security guards to be stationed between Barracks 19-22 may not have been the best judgment call in hindsight, but given the circumstances known to the Defendants at the time, the Court cannot say that the Defendants engaged in unconstitutionally cruel and unusual punishment. Moreover, the lieutenant specifically responsible for staff assignments on January 17, 2005 is not a defendant in this case.

### III. Conclusion

The Court finds for the Defendants and against the Plaintiff on the Eighth Amendment claim arising from the incident on January 17, 2005. This decision is not intended as any criticism of the amount or quality of the efforts of Plaintiff's counsel. On the contrary, the Court commends Plaintiff's counsel for his well prepared and thorough representation of Plaintiff's case.

IT IS SO ORDERED this 1st day of October, 2010.

_____
James M. Moody
United States District Judge